Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

-----------------------------------------------------------

**JAMES W. YOO**                                    )   Civil Action No. ___2 0 C V 6 2 7 6___
                                                    )
       **PLAINTIFF,**                              )   <u>**COMPLAINT**</u>
                                                    )
                                                    )
                                                    )
**STEPHANIE ANN SCROGER;**                          )   **INTERFERENCE WITH COMMERCE BY**
**PODS ENTERPRISES, LLC;**                          )   **THREATS OR VIOLENCE**
**SIRACUSA MOVING & STORAGE, INC;**                 )   **(18 U.S.C. § 1951)**
**PATRICIA FRASCA;**                                )
**DOES 1 - UNLIMITED;**                             )   **EQUAL RIGHTS UNDER THE LAW**
                                                    )   **(42 U.S.C. § 1981(a)(c))**
       **DEFENDANTS.**                             )
                                                    )   **ACTION FOR NEGLECT TO PREVENT**
                                                    )   **(42 U.S.C. § 1986)**
                                                    )
                                                    )   **AN ACTION TO RECOVER DAMAGES**
                                                    )   **FOR A PERSONAL INJURY**
                                                    )   **(NEW YORK CPLR § 214(5))**
                                                    )
                                                    )   **DEFAMATION**
                                                    )   **(NEW YORK CPLR § 215(3))**
                                                    )
                                                    )   **ASSAULT**
                                                    )   **(NEW YORK CPLR § 215(3))**
                                                    )
                                                    )   **INTENTIONAL INFLICTION OF**
                                                    )   **EMOTIONAL DISTRESS**
                                                    )   **(NEW YORK CPLR § 215(3))**
                                                    )
                                                    )   **NEGLIGENT INFLICTION OF**
                                                    )   **EMOTIONAL DISTRESS**
                                                    )   **(NEW YORK 75A Jur. 2d,**
                                                    )   **Limitations and Laches 215)**
                                                    )
                                                    )   **PERSONAL ACTION FOR INJURY TO**
                                                    )   **PERSON OR PROPERTY GENERALLY**
                                                    )   **(VIRGINIA § 8.01 - 243)**
                                                    )
                                                    )   **CIVIL ACTION FOR STALKING**
                                                    )   **(VIRGINIA § 8.01 - 42.3)**
                                                    )

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes



)
) **INTENTIONAL INFLICTION OF**
) **EMOTIONAL DISTRESS**
) **(VIRGINIA § 8.01 - 243)**
)
) **NEGLIGENT INFLICTION OF**
) **EMOTIONAL DISTRESS**
) **(VIRGINIA § 8.01 - 243)**
)
)
) ***DEMAND FOR JURY TRIAL***
)
)
) ***AMOUNT DEMANDED:***
) ***$808 MILLION***
)
)

## COMPLAINT AND DEMAND FOR JURY TRIAL

PLAINTIFF, James W. Yoo (hereinafter "PLAINTIFF"), files this Complaint against DEFENDANTS (hereinafter "DEFENDANTS"), demands a trial by jury, and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. PLAINTIFF and DEFENDANTS are citizens of different states, there is complete diversity between the parties, and the amount in controversy exceeds $75,000.

2.      This Court has supplemental jurisdiction of this matter over PLAINTIFF's state-law claims pursuant to 28 U.S.C. § 1367.

3.      **While the Venue is proper in this Court under 28 U.S.C. § 1391 since the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the Western District of New York (hereinafter "WDNY"), PLAINTIFF respectfully requests that this Court approves and transfers PLAINTIFF's Complaint from the WDNY Venue to the Eastern District of Virginia (hereinafter "EDVA") Venue due to and considering PLAINTIFF**

experiencing, including but not limited to, ongoing injuries and harm while resident in the
EDVA.

## PARTIES

4.      PLAINTIFF JAMES W. YOO (hereinafter "PLAINTIFF") resides with domicile in Arlington,
VA with zip code 22203 (hereinafter "RESIDENCE") whereby PLAINTIFF further receives mail at
PO BOX 7284 Arlington, Virginia 22207 USA (hereinafter "MAILING_ADDRESS").

5.      Defendant STEPHANIE ANN SCROGER (hereinafter "SCROGER") was PLAINTIFF's
former spouse, an employee of Verizon, and upon information and belief resides with domicile at
711 Rookery Way Macedon, New York 14502 USA (hereinafter "MACEDON").

6.      Defendant PODS ENTERPRISES, LLC. (hereinafter "PODS"), upon information and
belief, owns and operates the PODS warehouse located at 39 Breck Street Rochester New York
14609 USA (hereinafter "PODSROC").

        (1)     Defendant PODS' registered agent in the State of New York is:

                Corporate Creations Network Inc.

                15 North Mill Street  Nyack, New York  10960

        (2)     Defendant PODS' is registered as a Foreign Limited Liability Corporation in
        Rockland County in the State of Florida.

7.      Defendant SIRACUSA MOVING & STORAGE, INC (hereinafter "SIRACUSA"), upon
information and belief, resides with domicile at 250 Commerce Circle New Britain, Connecticut
06051 USA.

        (1)     Defendant SIRACUA's registered agent in the State of Connecticut is:

                Michael A. Carrier

                24 Cedar Street  New Britain, Connecticut  06052.  (Business address)

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

8.      Defendant PATRICIA FRASCA (hereinafter "P_FRASCA"), upon information and belief, resides with domicile at 699 Rookery Way Macedon, New York 14502 USA (hereinafter "MACEDON_PF").

9.      The true names and capacities of the DEFENDANTS, DOES 1 through UNLIMITED, whether individual, corporate, associate, or otherwise, are unknown to PLAINTIFF at the time of filing this Complaint and PLAINTIFF, therefore, sues said DEFENDANTS by such fictitious names and will ask leave of Court to amend this Complaint to show their true names and / or capacities when the same have been ascertained.

        (1)     PLAINTIFF thereupon alleges that each of the DOE DEFENDANTS is, in some manner, responsible for the events and happenings herein set forth and proximately cause injury and damages to the PLAINTIFF as herein alleged.

        (2)     PLAINTIFF further alleges that actual total number of DOE DEFENDANTS are unknown to PLAINTIFF at the time of filing this Complaint and PLAINTIFF, therefore, sues said DEFENDANTS without limits to the actual total number of DOE DEFENDANTS.

        (3)     PLAINTIFF further alleges that PLAINTIFF intends to utilize appropriate Court procedures, including but not limited to, the subpoena process to obtain information from, including but not limited to, PODS regarding PODS' ownership structure.

                i.      PLAINTIFF alleges that Ontario Teacher's Pension Plan located in Toronto Canada (hereinafter "OTPP") may be the primary owner of PODS;

                ii.     PLAINITFF intends, further into proceedings of this matter, to amend this Complaint by naming, serving, and joining OTPP to this Complaint.

## TOLL

10.     **TOLL. Plaintiff respectfully requests that the COURT(s) toll any and / or all limitations of time or statutes of limitations whereby any and / or all cause of action date(s) are delayed / tolled by the greater of number of days either the States of New York and / or**

**Virginia issues Orders which impact relevant COURT proceedings to this matter and complaint due to the "Coronavirus pandemic".**

## STATEMENT OF FACTS AND ALLEGATIONS

11.     DEFENDANTS' actual or attempted actions and conduct against PLAINTIFF inflicted, including but not limited to, ongoing emotional, ongoing mental, and ongoing psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

12.     PLAINTIFF realleges and incorporates, including but not limited to, the following documents into this Complaint as though set forth fully herein:

(1) Some of the following documents may have been filed in either the 7th Judicial District Monroe County Supreme Court in the State of New York (hereinafter "MONROE"), in the United States District Court for the Western District of New York (hereinafter "USWDNY"), or in the 7th Judicial District Wayne County Supreme Court in the State of New York (hereinafter "WCSCNY");

    i. **On or around March 31st 2017**, SCROGER files divorce as plaintiff against PLAINTIFF **on the grounds of no-fault, irretrievable breakdown of relationship** (refer to APPENDIX A), filed in MONROE, hereinafter "DIVORCEGROUNDS".

    ii. **On or around April 3rd 2017**, **PLAINTIFF files Domestic Incident Report with New York Wayne County Sherriff's Office AGAINST SCROGER** (refer to APPENDIX B), filed in MONROE, hereinafter "DIR_AGAINST_SCROGER".

    iii. **On or around November 8th 2017**, PLAINTIFF files Amended Verified Answer and Counter Complaint **on the grounds of Cruel and Inhuman treatment** (refer to APPENDIX C), filed in MONROE, hereinafter "SCROGER_IS_CRUEL".

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

iv. **On or around November 17th 2017**, SCROGER files Reply to PLAINTIFF's Amended Answer and Counter Complaint (refer to APPENDIX D), filed in MONROE, hereinafter "SCROGER_DIVORCEREPLY".

v. **On or around April 2nd 2018**, **PLAINTIFF demands trial by jury regarding divorce proceedings** (refer to APPENDIX E), filed in MONROE, hereinafter "PLAINTIFF_DEMANDS_DIVORCEJURY".

   a. PLAINTIFF's divorce attorney at that time, hereinafter "HARTZELL", wrote a letter to the assigned judge, Richard Dollinger (hereinafter "DOLLINGER"), requesting a trial by jury.

   b. **On or around May 18th 2018**, DOLLINGER denied PLAINTIFF's demand for trial by jury during the first Preliminary Conference of the divorce proceedings.

vi. **On or around June 26th 2018**, PLAINTIFF files an amended Federal civil complaint (hereinafter "AMENDED_WDNY_2018") against numerous defendants including SCROGER (refer to APPENDIX F), filed in MONROE.

vii. **On or around July 18th 2018,** PLAINTIFF files Reply Affidavit (hereinafter "REPLY") responding to SCROGER's opposition to PLAINTIFF's Motion to Stay divorce proceedings (hereinafter "STAY") considering AMENDED_WDNY_2018 (refer to APPENDIX G), filed in MONROE.

   a. Shortly after filing REPLY, STAY was dismissed by Judge Richard Dollinger.

viii. **On or around July 25h 2018**, only 29 days after PLAINTIFF filed AMENDED_WDNY_2018 and only 7 days after REPLY, Judge Charles J. Siragusa (hereinafter "CJ_SIRAGUSA") dismissed AMENDED_WDNY_2018 (hereinafter "DISMISSED_AMENDED_WDNY_2018") (refer to APPENDIX H), filed in USWDNY.

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

ix. **On or around November 2017 and September 2018**, PLAINTIFF exchanges emails with SCROGER and sends emails to SCROGER's primary divorce attorney, Seema Ali Rizzo (hereinafter "RIZZO"), regarding SCROGER procuring a $200,000 Accidental Death and Dismemberment life insurance policy against PLAINTIFF's life and body WITHOUT PLAINTIFF'S PRIOR KNOWLEDGE OR CONSENT (refer to APPENDIX I), hereinafter "SCROGER_DEATHTHREAT".

x. **On or around January 11th, 2019**, PLAINTIFF files amended civil complaint against SCROGER (Index Number 83566) under New York CPLR § 213(2) (an action upon a contractual obligation or liability), (hereinafter "AMENDED_WCSCNY_2019") (refer to APPENDIX J), filed in WCSCNY.

13. **DEFENDANTS and DOES continue to show patterns of attempted and / or actual abusive actions and harmful conduct towards PLAINTIFF.**

14. **On or around June 2016, July 2016, and August 2016**, PLAINTIFF visited:

(1) PLAINTIFF'S primary care physician, hereinafter "PRIMARYPHYSICIAN", to evaluate PLAINTIFF's right knee;

(2) PRIMARYPHYSICIAN's referral to x-ray technician PLAINTIFF's right knee, hereinafter "XRAYTECH";

(3) PRIMARYPHYSICIAN's referral to an orthopedic physician, hereinafter "ORTHO1";

(4) ORTHO1's referral to MRI technician, hereinafter "MRITECH", to conduct an MRI on PLAINTIFF's right knee;

(5) a second orthopedic physician from PLAINTIFF's own research, hereinafter "ORTHO2", for another opinion.

15. **On or around June 22nd 2016**, PLAINTIFF visited PRIMARYPHYSICIAN to evaluate right knee.

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

(1) PRIMARYPHYSICIAN record per PLAINTIFF's visit to evaluate right knee:

**Date:** 06/22/16
**Name:** James W Yoo

June 22, 2016     June 22, 2016June 22, 2016

### Subjective
**CC:** Patient presents with kne pain.

**HPI:** Pt c/o right knee for the last 3 days.
He started pickleball for about 6 months. He played 4 days ago for a tournament and the pain started 3 days ago. There is extensive running side to side and turning. The pain is getting significantly. It hurts in the medial area of right knee, decreased bending with tension. He had discomfort when he bends his right knee. He wears knees streps when he is playing. Denies any popping or clicking sound. He noticed slightly swelling that has gone down. No redness, no warmth. Sleeping made is better. He is able to bear weight on his right leg.

(2) PRIMARYPHYSICIAN record per PLAINTIFF's visit to evaluate right knee (continued):

| | |
|---|---|
| **Assessment #1:** | M25.561 Pain in right knee |
| Comments | : Most likely medial collateral ligament sprain.<br>DDx: medial meniscal tear, osteoarthritis, pes anserinus pain syndrome.<br>Advised rest, ice and NSAIDs<br>X-ray to r/o fracture.<br>Referral to ortho given if pain persists. |
| **Care Plan:** | |
| Comments | : You will complete xray of the back. We will call you with findings.<br>May take Ibuprofen every 6 hours as needed for pain.<br>Please use ice packing 15 minutes on and 15 minutes off. |
| Med New | : Ibuprofen 600 mg<br>1 tab every 8 hours a day as needed with food |

| | |
|---|---|
| Xray | : Knee, Complete, 4 Or More Views, RT |
| Referral | : |
| | ORTHOPAEDIC ASSOCIATES - SURGERY ORTHOPEDIC |
| Follow Up | : pm |
| **Plan Other:** | **"ORTHO1"** |
| Comments | : Counseled on medications, questions answered to patients satisfaction. Patient is able to self administer medication. |

**"PRIMARYPHYSICIAN"**

Seen by: Electronically signed by            MD on 06/22/2016 at 3:22 pm

James W. Yoo v. Stephanie Ann Scroger, PODS Enterprises LLC, et al.
Complaint. Page **8** of **76**            April 29th 2020

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

16.   **On or around June 22nd / June 23rd 2016**, PLAINTIFF visited PRIMARYPHYSICIAN's

referral to x-ray technician PLAINTIFF's right knee, hereinafter "XRAYTECH":



17.   **On or around June 29th 2016**, PLAINTIFF visited PRIMARYPHYSICIAN's referral to an

orthopedic physician, hereinafter "ORTHO1", for ORTHO1 to assess PLAINTIFF's right knee:

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

**JAMES W YOO**                                      DOB:
Date of Visit:  06/29/16

James Yoo is a ▯ year-old male who began experiencing knee pain roughly 2 months ago after playing a game of pickle ball. He does not describe any injuries. James was quite sore after the game. He describes mostly medially based knee pain. He was seen by his primary care doctor who sent him to ▯ for nonweightbearing x-rays demonstrating some mild osteophytosis within the lateral compartments. Otherwise, there are no other osseous abnormalities. James has been wearing a compression wrap, however, he believes he has a latex allergy as he had some reaction to some of the material he is using to wrap his knee. He has taken ibuprofen, which did not help. He has also taken Aleve, which has helped. James denies any back pain or radicular symptoms. He describes these episodes of pain particularly with any type of twisting. He also describes tightness throughout his knee.

Information supplemental to this note including Past Medical/Surgical History, Medications, Allergies, Social History, Family History, Review of Systems is recorded in the annotated patient questionnaire of this date, and located in the patient's chart.

PHYSICAL EXAM: James is a well appearing male in no apparent distress. He is alert and oriented. He has a nonlabored respiratory pattern, ▯ On evaluation of his lower extremities he has no apparent limb length discrepancy. He has no ecchymosis or deformity. He does have a moderate effusion. He is nontender over his quadriceps or hamstrings. He is nontender over his patella patellar tendon. He is nontender over his tibial tuberosity. He has some mild pes anserine tenderness. He is tender over his medial joint line. He is nontender over his lateral joint line. He is nontender over his MCL or LCL. He is nontender over his posterior knee. He extends to 0 degrees. He flexes to about 110. With deep knee flexion he begins experiencing onset of media compartment pain. He is stable to ACL, PCL, MCL, and LCL testing. I was unable to perform circumduction maneuvers today secondary to limits in deep knee flexion. His thigh and calf are supple. He can dorsiflex, plantarflex, invert, and evert his foot. His foot is sensate, warm, well perfused, and he has palpable pulses.

IMAGING: As stated in history of present illness, I reviewed films from ▯ These are 3 views demonstrating a small degree of osteophytosis over the lateral compartment. However, these are nonweightbearing films and it is difficult to assess degree of arthritis.

IMPRESSION: Right knee pain, possible medial meniscus tear. 

PLAN: We are going to further evaluate James knee with an MRI to assess his medial meniscus and cartilage. We will see him back after review. In the meantime he will continue to take Aleve and I provided him an ace bandage for him to wrap his knee for compression. I invited and answered questions to his satisfaction. We will see him when the MRI is complete.

JAMES W YOO                              DOB:
Date of Visit:  06/29/16

Electronically signed by ▯ , M.D. ◄— "ORTHO1"

James W. Yoo v. Stephanie Ann Scroger, PODS Enterprises LLC, et al.
Complaint.  Page **10** of **76**            April 29th 2020

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

(1)     ORTHO1 strongly suggested and recommended that PLAINTIFF undergo full

knee arthroscopy surgery to remedy PLAINTIFF's right knee for possible "medial

meniscus tear", hereinafter "MMT" and noted with arrow on above record, during

PLAINTIFF's June 29th 2016 visit.

     i.  ORTHO1 diagnosed Plaintiff with MMT prior to the actual MRI of PLAINTIFF's

        right knee.

(2)     ORTHO1's referral for MRI on PLAINTIFF's right knee to examine for possible

medial meniscus tear (hereinafter "MMT") noted with arrows on the referral below:



James W. Yoo v. Stephanie Ann Scroger, PODS Enterprises LLC, et al.
Complaint.  Page **11** of 76                         April 29th 2020

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

18.    **On or around July 7th 2016**, PLAINTIFF visited ORTHO1's referral to MRI technician,

hereinafter "MRITECH", to conduct an MRI on PLAINTIFF's right knee:



Patient: JAMES YOO

Date of Service: 07/07/2016

7/7/2016 8:00 AM

MRI RIGHT KNEE WITHOUT CONTRAST

HISTORY: Right knee pain.

COMPARISON: 6/22/2016

PROCEDURE: High field strength MRI (1.5 Tesla) was performed at [        ]
Hospital. Coronal and sagittal FSE proton density weighted images; coronal,
sagittal, and axial fat saturated fast spin echo long TR images were obtained.

FINDINGS:

Cruciate Ligaments: The anterior and posterior cruciate ligaments are intact.

Extensor Tendons: Visualized portions of the quadriceps and patellar tendons
are normal.

Collateral Ligaments: The medial collateral ligament and lateral collateral
ligament complex are normal. The patellar retinaculum is intact.

Medial Meniscus: There is mild blunting along the inner margin of the medial
meniscal body and displaced meniscal material into the inferior gutter
suggestive of a flap tear, coronal image 17. There are also appears to be a
displaced parrot beak tear of the posterior horn, coronal 17, sagittal 12 and
axial 17.

Lateral Meniscus: Normal.

Cartilage: Normal.

Joint Effusion: There is a moderate joint effusion.

Baker's Cyst: There is no Baker's cyst.

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

James W Yoo

Loose Bodies: None.

Bones: Minimal reactive bone marrow edema along the medial most corner of the medial tibial plateau

Soft tissues: Visualized soft tissue structures are normal

Miscellaneous: Lateral patellar plica is borderline thickened measuring 2 mm.

IMPRESSION:

1. Flap tear involving the medial meniscus body with blunting along the inner margin of the medial meniscus body and displaced meniscal material into the inferior gutter. There is also a suspected parrot beak type tear of the posterior horn of the medial meniscus.

2. Lateral patellar plica measuring approximately 2 mm is at the upper limits of normal.

3. Moderate joint effusion

END REPORT

Signed By:                              "MRITECH"

Reported By:                            "MRITECH"
Date: 07/07/2016 11:04

19.     PLAINTIFF received a DVD copy of the MRI images conducted on PLAINTIFF's right knee by MRITECH (hereinafter "MRI_IMAGES").

20.     **ONE DAY AFTER MRI on PLAINTIFF's RIGHT KNEE, ON JULY 8th 2016, PLAINTIFF competed in a singles pickleball tournament in Buffalo New York (hereinafter "RIVERWORKS") with SCROGER attending whereby PLAINTIFF played several matches.**

(1)     **SCROGER posted several video clips (captured on SCROGER's mobile phone) to SCROGER's Facebook account of PLAINTIFF competing at RIVERWORKS (hereinafter "FBOOKVIDEO1") whereby SCROGER showed FBOOKVIDEO1 to PLAINTIFF.**

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

(2)    **FBOOKVIDEO1** shows PLAINTIFF rigorously competing in a singles pickleball tournament match against a highly ranked pickleball player and shows PLAINTIFF rigorously utilizing PLAINTIFF's right knee.

21.    <u>**On or around July 15th 2016**</u>, PLAINTIFF scheduled an appointment with ORTHO1 for July 15, 2016 and insisted on consultation with only ORTHO1 whereby the ORTHO1's nurse (hereinafter "FNP@ORTHO1") refused PLAINTIFF's request to consult with ORTHO1 and insisted that she, FNP@ORTHO1, discuss results with PLAINTIFF.

(1)    Diagnosis of PLAINTIFF's right knee MMT noted with arrows below:



James W. Yoo v. Stephanie Ann Scroger, PODS Enterprises LLC, et al.
Complaint.  Page **14** of 76        April 29th 2020

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

(2)    Diagnosis of PLAINTIFF's right knee MMT noted below (continued):

**JAMES W YOO**                    **"ORTHO1"**➡    DOB:
Date of Visit: 07/15/16                                        M.D.

James returns to the office today for follow up of his right knee pain and for his MRI
results. He states that he notices a continued tightness in the knee overall he is feeling
better. He is still playing pickle ball and played for two hours today. He has some
more tightness when he is playing and he feels that he is slightly limited with his
routine activities but does not describe a distinct pain. He does not note any swelling.

PHYSICAL EXAM:    year-old male appears stated age. Alert, oriented and in no
acute distress. He ambulates with a non-antalgic gait. Exam of the right knee reveals
intact skin. There is no redness or swelling, there is no effusion. He is tender to
palpation at the medial and lateral joint line. He is non-tender at the MCL or LCL. He
has full extension and can flex comfortably to 110 degrees. The calf is soft and
non-tender. Distal CMS is intact.

RADIOLOGY: MRI of the right knee on 7/7/16 reveals a flap tear involving the
medial meniscus body with blunting along the inner margin of the medial meniscus
body and displaced meniscal material into the inferior gutter. There is also a suspected
parrot beak type tear of the posterior horn of the medial meniscus. The lateral patella
plica measuring approximately 2 millimeters is at the upper limits of normal and there is
a moderate joint effusion. The cartilage appears normal.

ASSESSMENT    year-old male with right knee meniscus tear.

PLAN: The findings were reviewed with Dr.    who has offered him arthroscopic
medial meniscectomy stating that this will help him feel better. James is reluctant to
consider surgery at this time and had a lot of questions about non-operative treatment. I
did provide him with Dr.    patient instructions for ACL repair and I also
directed him to Dr.    website which has links to the AAOS for further
information. I did advise that if he is not experiencing significant pain or swelling and
if he feels that this is not limiting his activities he is certainly welcome to continue to
treat this conservatively. He knows he can contact us for worsening symptoms. Should
he request a steroid injection in the future we could potentially offer him that as well
and if he chooses to schedule surgery he will contact the office and we can complete
paperwork at that time. His questions were answered and he is comfortable with this
plan.

**"FNP @ ORTHO1"**

Electronically signed by    FNP-C

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

(3)    Information provided to PLAINTIFF by FNP@ORTHO1 on behalf of ORTHO1:



**MD**

### Patient Information Sheet: Knee Arthroscopy.
### This is a general information packet for patients undergoing Knee Arthroscopy.

Arthroscopic surgery involves using a video camera and small instruments through small incisions to see the anatomy of the knee joint. The video camera allows us to visually inspect the knee joint and evaluate the knee ligaments, meniscus and articular cartilage. With instruments as small as dental utensils we can treat specific knee problems such as meniscal tears or cartilage injuries. The most common disorder treated with arthroscopy is meniscal tears. The meniscus is a C shaped piece of cartilage that can be found sandwiched between the thigh bone (Femur) and the shin bone (Tibia). This cartilage may be found in the outside (lateral) and the inside (medial) of the knee joint. The most basic purpose of the meniscus is to act as a shock absorber for the knee joint.

**Meniscal Injury:**

The meniscus can be injured both acutely and chronically. Acute injury to the meniscus most often occurs during sports or activities that stress the knee joint such as twisting and rotation movements. Often patients will feel pain immediately after the initial event and the knee will swell within the next 24 hours. Chronic or degenerative tears may not have a clear defined origin. The patient may have swelling and pain during or after activity. The most frequent symptoms of a meniscal tear are pain, swelling, giving way and locking.

Your orthopedic provider will evaluate your knee for a meniscal tear. An MRI can further demonstrate the torn meniscus and reveal other associated injuries. Once a symptomatic tear is confirmed, arthroscopic surgery will be discussed.

Your surgeon may recommend a partial meniscectomy [men-esec-tomy]. During this arthroscopic procedure, the torn portion of the meniscus is removed. While removing the torn portion of the meniscus, we try to preserve as much of the meniscus as possible in order to maintain the cushioning effect provided by this cartilage.

Most patients experience full relief from removing the torn cartilage; however the articular cartilage often dictates the recovery. If there are significant degenerative findings at the time of surgery recovery may be delayed and 100% recovery may not be possible. In special circumstances the meniscus can be repaired. This depends on the patient's age and tear location. As with any surgical procedure, there are risks to knee arthroscopy. Although extremely rare these risks include but are not limited to infection and blood clot formation.

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

(4)    Information provided to PLAINTIFF by FNP@ORTHO1 on behalf of ORTHO1 (continued):

**Pre-Surgery:**

Before surgery, patients are instructed to continue to be as active as the knee permits **excluding participation in sports**. The following are specific instructions leading up to arthroscopic knee surgery:



- On the night before surgery, do not eat or drink after midnight (no chewing gum or lozenges).
- On the morning of surgery you may take your daily pills with a sip of water.

**Surgery:**

The length of the procedure is approximately 20-45 minutes. This may be longer depending on whether there are other associated injuries. Your nurse will bring you into the pre-op area were you will have an IV placed and meet with your anesthesiologist. General anesthesia is utilized to assure a comfortable surgery. Most patients will have a small tube placed in their windpipe; formal intubation may not be required. This means that you will be "asleep" and completely unaware of the surgery until you wake up in the recovery area.

**Post-Surgery:**

After the surgery is completed, you will awaken in the operating room and be moved to the recovery area. After surgery, most patients generally recover smoothly and have minimal pain due to local pain medication that is used at the completion of the surgery.

- **Take one 325 mg (full strength) aspirin daily for 21 days (unless otherwise instructed or allergic) to prevent blood clots.**
- A pain medication prescription will be provided prior to surgery. You may take the prescribed medication as directed. You should expect to experience moderate knee discomfort for several days and even weeks following the surgery. Patients often only need prescription narcotics for a few days following the surgery and then switch to over-the-counter medications such as Tylenol or Ibuprofen.
- Ice bags and elevation should be utilized to decrease swelling and pain. Ice should be applied to the knee up to three times a day for 20 minutes until swelling subsides.
- You should be comfortable walking independently with crutches before leaving the hospital or surgery center.
- If the bandage is draining, reinforce it with additional dressings for the first 24 hours. After 24 hours, remove the bandage and place band aids over the incision sites. Showering is acceptable at this time. Do not submerge or scrub the knee.
- Rehabilitation starts the day of surgery. See exercises at end of packet Set aside 3-4 times a day for range of motion and exercise strengthening program.

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

(5)      Information provided to PLAINTIFF by FNP@ORTHO1 on behalf of ORTHO1 (continued):

- Eat a regular diet as tolerated and please drink plenty of fluids.
- First post-op appointment is 7-10 days for suture removal with either Dr. ____ or his physician assistants. If a follow-up appointment has not been scheduled, please call ____ to make this appointment.
- You may drive once you establish control of you operative extremity.
- Call office for Temperature >102 degrees, excessive swelling, pain or redness around incisions.
- Plan at least 2-3 days away from work or school. Utilize this time to decrease swelling and participate in your home exercise program. You may be able to resume work once the pain and swelling resolves (this varies based on job activity).

**Meniscal Repair:**
If your meniscus was repaired during the surgery, your rehabilitation will be slightly altered:

1) Maintain non-weight bearing on your leg until first post-operative visit.
2) Brace instructions: Typically used for 4-6 weeks. This will be discussed further at first post-operative visit.



Arthroscopic view of a Meniscal Repair

**You will receive a post-operative call the day after surgery. Please disable any call blocking functions on your phone to receive the call.**

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

(6)   Information provided to PLAINTIFF by FNP@ORTHO1 on behalf of ORTHO1 (continued):



**Early Post-operative Exercises**

*Start the following exercises as soon as you are able. You can begin these in the recovery room shortly after surgery. You may feel uncomfortable at first, but these exercises will speed your recovery and actually diminish your post-operative pain.*

**Quad Sets** - Tighten your thigh muscle. Try to straighten your knee. Hold for 5 to 10 seconds. Repeat this exercise approximately 10 times during a two minute period, rest one minute and repeat. Try to do 20-50 per hour. You actually cannot do too many of this exercise.



**Straight Leg Raises** - Tighten the thigh muscle with your knee fully straightened on the bed, as with the Quad set. Lift your leg several inches. Hold for 5-10 seconds. Slowly lower. Repeat until your thigh feels fatigued.



**Ankle Pumps** - Move your foot up and down rhythmically by contracting the calf and shin muscles. Perform this exercise periodically for 2-3 minutes, 2-3 times an hour in the recovery room. Continue this exercise until you are fully recovered and all ankle and lower-leg swelling has subsided.



**Knee Straightening Exercises** - Place a small rolled towel just above your heel so that it is not touching the bed. Tighten your thigh. Try to fully straighten your knee and to touch the back of your knee to the bed. Hold fully straightened for 5-10 seconds. Repeat until your thigh feels fatigued.



**Bed-Supported Knee Bends** - Bend your knee as much as possible while sliding your foot on the bed. Hold your knee in a maximally bent position for 5 to 10 seconds and then straighten. Repeat several times until your leg feels fatigued or until you can completely bend your knee.

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

(7)     Information provided to PLAINTIFF by FNP@ORTHO1 on behalf of ORTHO1 (continued):

## Knee Arthroscopy - Frequently Asked Questions

**1) There is bleeding through the ace wrap on my knee, what do I do?**
You may experience some bleeding or staining of the ace wrap/dressing that has been placed over the incisions of your knee. This is normal. Reinforce the current dressing with sterile gauze and an additional ace wrap. All of this equipment can be purchased at your local pharmacy. Remove all dressings 24 hours later and re-evaluate.

**2) When can I drive?**
You can drive when you have full control of the leg and you are not utilizing narcotic pain medication.

**3) Do I need to use crutches?**
The crutches while recommended for at least 48 hours are not mandatory assuming you did not have a meniscal repair. If you can ambulate without pain or instability you do not need to use crutches.

**4) How does osteoarthritis influence my recovery?**
Osteoarthritis may lengthen a recovery from a knee arthroscopy and ultimately influence the outcome in both the long and short term. Patients with underlying osteoarthritis may require a post-operative Cortisone injection or Hyaluronic acid injections

**5) What should I do if I get constipated from the narcotics?**
Over the counter stool softeners can be very effective for post-op narcotic induced constipation. These medications can be found at your local pharmacy. If they should be ineffective please call our office.

21.     **On or around July 15th 2016**, FNP@ORTHO1 denied PLAINTIFF's request to discuss MRI with ORTHO1 whereby FNP@ORTHO1 was the only staff member to discuss PLAINTIFF's MRI results.

(1)     ORTHO1 demonstrates 'conduct' to use 'intermediaries' or 'indirect' parties, that is using FNP@ORTHO1, in attempts to create 'plausible deniability'.

22.     PLAINTIFF experienced a similar 'pattern of conduct' from another medical professional located near ORTHO1 on or around February 2016 noted in AMENDED_WDNY_2018.

(1)     PLAINTIFF scheduled an appointment with a gastrointestinal doctor (hereinafter "GIDOC") to review PLAINTIFF's liver ultrasounds and results.

(2)     GIDOC's nurse (hereinafter "GINURSE") refused PLAINTIFF's request to consult with GIDOC and insisted that she, GINURSE, discuss results with PLAINTIFF.

(3)     GIDOC demonstrates 'conduct' to use 'intermediaries' or 'indirect' parties, that is using GINURSE, in attempts to create 'plausible deniability'.

(4)     PLAINTIFF documented numerous examples of, including but not limited to, SCROGER demonstrating a 'pattern of conduct' to use 'intermediaries' or 'indirect' parties in attempts to create 'plausible deniability' noted in, including but not limited to, AMENDED_WDNY_2018.

23.     DEFENDANTS, including but not limited to, **SCROGER, ORTHO1, FNP@ORTHO1, GIDOC, GINURSE, and DOES demonstrate a 'pattern of conduct'** to use 'intermediaries' or 'indirect' parties **in attempts to create 'plausible deniability'**, directly or indirectly, **and shows motives highly likely correlated to cover-up collusion, conspiracy, and potentially civilly and criminally liable behavior.**

24.     DEFENDANTS, including but not limited to, SCROGER, ORTHO1, FNP@ORTHO1, GIDOC, GINURSE, and DOES who demonstrate a 'pattern of conduct' to use 'intermediaries' or 'indirect' parties in attempts to create 'plausible deniability' primarily against people of non-Caucasian origin are behaving, directly or indirectly, in a racist and hateful manner against people of non-Caucasian origin.

25.     DEFENDANTS, including but not limited to DEFENDANTS and DOES, demonstrating a 'pattern of conduct' to avoid using electronic communication methods, specifically email or electronic messaging, directly or indirectly, shows motives to create 'plausible deniability' and further shows, directly or indirectly, motives highly likely correlated to engage in collusion and conspiracy whose behavior may be civilly and criminally liable.

26.     ORTHO1 and ORTHO2 strongly suggested and recommended that PLAINTIFF undergo full knee arthroscopy surgery to remedy PLAINTIFF's right knee.

27.    **On or around August 2016**, PLAINTIFF requested PLAINTIFF's medical records from PLAINTIFF's medical providers around the Western New York and Finger Lakes area including but not limited to PRIMARYPHYSICIAN, ORTHO1, and ORTHO2.

28.    **On or around the middle of August 2016, PLAINTIFF scheduled and visited ORTHO2 for a second opinion.**

    (1)    PLAINTIFF can provide, including but not limited to, further invoices and bills to substantiate PLAINTIFF's Complaint.

    (2)    PLAINTIFF brought MRI_IMAGES for ORTHO2 to examine.

    (3)    ORTHO2 examined PLAINTIFF's right knee and studied MRI_IMAGES in another room without PLAINTIFF's presence.

    (4)    PLAINTIFF discussed ORTHO1's recommendation to conduct full knee arthroscopy surgery under full anesthesia while conveying PLAINTIFF's concerns.

    (5)    ORTHO2 agreed with ORTHO1 and strongly suggested and recommended that ORTHO2 could conduct full knee arthroscopy surgery to remedy PLAINTIFF's right knee at Strong Memorial Hospital (hereinafter "STRONG") especially considering ORTHO2's mother had a very good surgical experience at STRONG.

29.    PLAINTIFF can provide more evidence further into this Complaint's proceedings regarding:

    (1)    recommendations that PLAINTIFF undergo full knee arthroscopy surgery under FULL ANESTHESIA, that is, PLAINTIFF is completely unconscious during surgery on PLAINTIFF's right knee;

    (2)    PLAINTIFF's concerns about recommendations for PLAINTIFF to undergo full anesthesia to remedy PLAINTIFF's right knee;

    (3)    DVD-CD of PLAINTIFF's right knee MRI conducted by MRITECH.

30.    PLAINTIFF discussed PLAINTIFF's concerns about recommendations to undergo full anesthesia to remedy PLAINTIFF's right knee with, include but is not limited to SCROGER,

P_FRASCA, and John Campana, hereinafter J_CAMPANA, who was P_FRASCA's partner living in P_FRASCA's home, and who supposedly passed away as noted in AMENDED_WDNY_2018.

      (1)     SCROGER and P_FRASCA are aware that J_CAMPANA is still alive.

31.     Including but not limited to the following persons have knowledge or received PLAINTIFF's information and / or documents regarding PLAINTIFF's right knee: SCROGER, PRIMARYPHYSICIAN, XRAYTECH, ORTHO1, FNP@ORTHO1, MRITECH, ORTHO2; and persons involved in PLAINTIFF's divorce proceedings, including but not limited to, PLAINTIFF's two divorce attorneys.

32.     SCROGER was / is aware of PLAINTIFF's significantly improved right knee condition from SCROGER's visiting PLAINTIFF at MACEDON after SCROGER moved out of MACEDON on her own volition.

33.     PLAINTIFF had a bona fide reason to medically examine PLAINTIFF's right knee due to sports related activity and that PLAINTIFF noticed improved right knee condition over a period of time:

34.     PLAINTIFF would provide more evidence further into the proceedings, including but not limited to, showing PLAINTIFF's attempts to use knee braces as a method to start with the least invasive manner to treat PLAINTIFF's right knee;

**35.     PLAINTIFF has not visited any other persons or medical professionals to examine, recommend, or treat PLAINTIFF's right knee in any manner other than by PRIMARYPHYSICIAN, XRAYTECH, ORTHO1, FNP@ORTHO1, MRITECH, or ORTHO2 (hereinafter collectively "KNEE_DOCS").**

**36.     PLAINTIFF's right knee is currently without pain or injury and has been without pain or injury from around October or November 2016 and onward towards the present date.**

**37.     Including but not limited to, PLAINTIFF's ability to rigorously play several matches in a singles pickleball tournament on or around July 8th 2016 in Buffalo New York, just one day after PLAINTIFF's MRI, shows a high probability and / or likelihood that physicians',**

including but not limited to, KNEE_DOCS' assessments and / or diagnosis of PLAINTIFF's right knee condition is likely inaccurate and / or fraudulent.

38.    PLAINTIFF has explicitly stated to previous PLAINTIFF attorneys and PLAINTIFF continues to allege that PLAINTIFF has never recorded any audio-only conversations with anyone.

39.    Paragraphs 14 through Paragraphs 38 will herein be collectively referred to as "THEKNEE".

40.    **On or around March 31st 2017**, SCROGER files divorce as plaintiff against PLAINTIFF **on the grounds of no-fault, irretrievable breakdown of relationship** (refer to APPENDIX A), filed in MONROE, hereinafter "DIVORCEGROUNDS".

41.    **On or around April 3rd 2017, PLAINTIFF files Domestic Incident Report with New York Wayne County Sheriff's Office AGAINST SCROGER** (refer to APPENDIX B), filed in MONROE, hereinafter "DIR_AGAINST_SCROGER".

42.    **On or around November 8th 2017**, PLAINTIFF files Amended Verified Answer and Counter Complaint **on the grounds of Cruel and Inhuman treatment** (refer to APPENDIX C), filed in MONROE, hereinafter "SCROGER_IS_CRUEL".

43.    **On or around November 17th 2017**, SCROGER files Reply to PLAINTIFF's Amended Answer and Counter Complaint (refer to APPENDIX D), filed in MONROE, hereinafter "SCROGER_DIVORCEREPLY".

44.    **On or around November 2017 and September 2018**, PLAINTIFF exchanges emails with SCROGER and sends emails to SCROGER's divorce attorney, Seema Ali Rizzo (hereinafter "RIZZO"), regarding SCROGER procuring a $200,000 Accidental Death and Dismemberment life insurance policy against PLAINTIFF's life and body WITHOUT PLAINTIFF'S PRIOR KNOWLEDGE OR CONSENT (refer to APPENDIX I), hereinafter "SCROGER_DEATHTHREAT".

45. **On or around April 2nd 2018**, **PLAINTIFF demands trial by jury regarding divorce proceedings** (refer to APPENDIX E), filed in MONROE, hereinafter "PLAINTIFF_DEMANDS_DIVORCEJURY".

46. PLAINTIFF's divorce attorney at that time, hereinafter "HARTZELL", wrote a letter to the assigned judge, Richard Dollinger (hereinafter "DOLLINGER"), requesting a trial by jury.

47. **On or around May 18th 2018**, DOLLINGER denied PLAINTIFF's demand for trial by jury during the first Preliminary Conference of the divorce proceedings.

48. **On or around June 26th 2018**, PLAINTIFF files an amended Federal civil complaint (hereinafter "AMENDED_WDNY_2018") against numerous defendants including SCROGER (refer to APPENDIX F), filed in MONROE.

49. **On or around July 18th 2018,** PLAINTIFF files Reply Affidavit (hereinafter "REPLY") responding to SCROGER's opposition to PLAINTIFF's Motion to Stay divorce proceedings (hereinafter "STAY") considering AMENDED_WDNY_2018 (refer to APPENDIX G), filed in MONROE.

    (1)    Shortly after filing REPLY, STAY was dismissed by Judge Richard Dollinger.

50. **On or around July 25h 2018**, only 29 days after PLAINTIFF filed AMENDED_WDNY_2018 and only **7** days after REPLY, Judge Charles J. Siragusa (hereinafter "CJ_SIRAGUSA") dismissed AMENDED_WDNY_2018 (hereinafter "DISMISSED_AMENDED_WDNY_2018") (refer to APPENDIX H), filed in USWDNY.

51. **On or around** November 2017 **and September 2018**, PLAINTIFF exchanges emails with SCROGER and sends emails to SCROGER's divorce attorney, Seema Ali Rizzo (hereinafter "RIZZO"), regarding SCROGER procuring a $200,000 Accidental Death and Dismemberment life insurance policy against PLAINTIFF'S life and body WITHOUT PLAINTIFF'S PRIOR KNOWLEDGE OR CONSENT (refer to APPENDIX I), hereinafter "SCROGER_DEATHTHREAT".

52. **On November 28th 2018**, divorce proceedings in MONROE resulted in a Judgement and Decree of Divorce (hereinafter "DECREE") and Oral Stipulations (hereinafter "STIP") (hereinafter

"DECREE" and "STIP" collectively referred to as "DIVORCE") via MONROE Trial by Referee session.

    (1)    Since PLAINTIFF was denied a trial by jury by DOLLINGER, PLAINTIFF demanded a trial by MONROE (trial by the court).

    (2)    PLAINTIFF was never made aware that the November 28th 2018 session at MONROE was proceeding as a Trial by Referee.

    (3)    PLAINTIFF became aware that the November 28th session at MONROE was conducted as a Trial by Referee upon reading the draft DECREE received on December 12th 2018.

53.    **In early December 2018**, PLAINTIFF called a competitor of PODS mobile storage (hereinafter "PACK") to schedule mobile storage unit delivery to MACEDON.

54.    PLAINTIFF can provide copies of mobile phone call records and emails regarding interactions with PACK.

55.    **On or around January 11th, 2019**, PLAINTIFF files amended civil complaint against SCROGER (Index Number 83566) under New York CPLR § 213(2) (an action upon a contractual obligation or liability), (hereinafter "AMENDED_WCSCNY_2019") (refer to APPENDIX J), filed in WCSCNY.

56.    **Until near the end of January 2019**, PLAINTIFF continued to reside in MACEDON.

57.    **On January 4th, 2019**, PACK delivered a mobile storage unit (hereinafter "PACKUNIT") to MACEDON.

    (1)    **On January 4th, 2019**, P_FRASCA, residing two houses on the same street side from MACEDON, returned and parked her car outside on MACEDON_PF's driveway.

        i. P_FRASCA, while insider her car and upon exiting her car on MACEDON_PF driveway, stared at PLAINTIFF and PACKUNIT parked outside on MACEDON driveway, for a few minutes.

    ii.   There is and was a relative clear view between MACEDON_PF driveway and MACEDON driveway.

    iii.   P_FRASCA contacted and communicated with, directly or indirectly, with SCROGER regarding PLAINTIFF and PACKUNIT.

    iv.   The events described in Paragraph 22.1.i through Paragraph 22.1.iii are, including but not limited to, a contributing factor leading to the events described in Paragraph 23 whereby SCROGER contacts her divorce attorneys.

58.    **Late afternoon on January 4th 2019**, PLAINTIFF received an email from PLAINTIFF's former divorce attorney (hereinafter "EMAIL1").

    (1)   EMAIL1 originated from Caitlin Carrigg, one of SCROGER's divorce attorneys, and stated, "Seema is out sick, but I am an attorney working with her and have just spoken with Ms. Yoo.  Our client is concerned because she learned that Mr. Yoo had a sizeable storage "pod" recently delivered and then subsequently removed from the marital home".

        i.   PLAINTIFF received EMAIL1 only several hours after the events described in Paragraph 56.

59.    **On or around late January 4th 2019**, PLAINTIFF switched mobile storage units to a different company.

    (1)   PLAINTIFF coordinated with PODS and a PODS customer service representative (hereinafter "PODS_REP") whereby PODS delivered a mobile storage unit (hereinafter "PODSUNIT") to PLAINTIFF at MACEDON on or around late January 2019.

60.    **Including but not limited to, SCROGER, P_FRASCA and DOES utilized, directly and / or indirectly, a network of contacts comprising of, including but not limited to, persons and / or entities, to surreptitiously track and monitor PLAINTIFF's activities with, including but not limited to, PODS and PODSROC.**

61.    PLAINTIFF can provide copies of mobile phone call records, text messages, and emails regarding interactions with PODS and PODS_REP to further support PLAINTIFF's Complaint.

62.     PLAINTIFF only interacted with PODS and / or PODS_REP prior to travelling to and arriving at PODSROC whereby the only persons and / or entities with information and / or knowledge about PLAINTIFF'S estimated arrival at PODSROC is PODS and / or PODS_REP.

63.     **On July 13th 2019**, PLAINTIFF drove from RESIDENCE to the PODS storage facility in Rochester New York located at 39 Breck Street Rochester New York 14609 (hereinafter "PODSROC").

(1)     PLAINTIFF arrived at PODSROC around 12pm whereby a moving truck from SIRACUSA was already parked in front of PLAINTIFF's PODSUNIT upon and prior to PLAINTIFF's arrival at PODSROC.



a.   picture, hereinafter "SIRACUSA_PIC1";

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes



b.  picture, hereinafter "SIRACUSA_PIC2"



c.  picture, hereinafter "SIRACUSA_PIC3";

(2)     A young adult Caucasian male (hereinafter "YACM1"), a young adult Caucasian female (hereinafter "YACF1"), and a young adult African-American male (hereinafter "YAAM1"), hereinafter collectively "MOVERS", moved items from the SIRACUSA moving truck with **Connecticut license plates number "AE 30543"** (hereinafter "SIRACUSA_TRUCK") to a PODS storage unit placed next to PLAINTIFF's PODSUNIT.

(3)     Two other young adult African-American males (hereinafter "YAAM2" and "YAAM3" respectively) helped MOVERS for a short duration of time, arriving and leaving during PLAINTIFF's time at PODSROC.

(4)     PLAINTIFF completed gathering a few items from PODSUNIT within around 30 minutes.

**(5)     PLAINTFF identifies YACM1, YACF1, YAAM1, YAAM2, and YAAM3 as DOES1, DOES2, DOES3, DOES4, and DOES5 (hereinafter "DOES1-5") respectively as PLAINTIFF intends to use appropriate Court procedures, including but not limited to, the subpoena process to obtain information from SIRACUSA for, including but not limited to, records and information leading to naming, serving, and joining DOES1-5 to this Complaint and to amend this Complaint accordingly.**

64.     **On August 3rd 2019**, PLAINTIFF drove from RESIDENCE to PODSROC.

(1)     PLAINTIFF arrived at PODSROC around 12pm.

(2)     PLAINTIFF completed gathering a few items from PODSUNIT within around 30 minutes.

(3)     PLAINTIFF noticed graffiti on other PODS storage units on the premises of PODSROC across from PODSUNIT:

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes



i.   picture, hereinafter "PODSROC_GRAFFITI_ALL";

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes



    ii.    picture, hereinafter "PODSROC_GRAFFITI_ASIAN_HATE_CRIME";



     iii.    picture, hereinafter "PODSROC_GRAFFITI_EXTORTION";

     iv.    A PODSROC truck driver (hereinafter "PODSROCTDRIVER") opened the

          PODSROC storage facility garage door, drove the PODS truck out of the

          PODS storage facility, and observed PLAINTIFF capture pictures noted as

          PODSROC_PIC1.

65.    The presence of SIRACUSA and MOVERS on the exact same date and time as

PLAINTIFF's arrival to PODSROC on July 13th, 2019 is an actual or attempted threat made by

DEFENDANTS and DOES, reminding PLAINTIFF of PLAINTIFF's ordeal at Rochester General

Hospital (hereinafter "RGH") as described in, including but not limited to,

AMENDED_WDNY_2018;

     (1)    CJ_SIRAGUSA presided over PLAINTIFF's AMENDED_WDNY_2018.

(2)    SIRACUSA's and, including but not limited to, DOES actions and conduct was purposeful and intentional considering SIRACUSA's company name is extremely close and similar to CJ_SIRAGUSA's last name "Siragusa".

(3)    The physical presence of DOES1-5 and SIRACUSA is an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF.

66.    The graffiti noted in PODSROC_GRAFFITI_ASIAN_HATE_CRIME and PODSROC_GRAFFITI_EXTORTION is and actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF.

(1)    The graffiti on PODSROC_GRAFFITI_ASIAN_HATE_CRIME is an implicit and explicit expression of hate and is an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF whereby the graffiti;

    i.    is an Asian man (slanted eyes);

    ii.    wearing a "Chinaman's rice paddy worker's" hat (hereinafter "HAT"), whereby;

    iii.    HAT is the grip / handle of a sword, and

    iv.    HAT's brim is the guard of a sword, and

    v.    HAT's blade, attempting to disguise as Asian man's tongue, is thrusted through Asian man's skull and out of Asian man's mouth; and

    vi.    is an implicit and explicit expression of hate, that is a crime of hate, against PLAINTIFF made by DEFENDANTS and DOES based on PLAINTIFF's racial and ethnic Asian heritage.

(2)    PODSROC_GRAFFITI_ASIAN_HATE_CRIME is, including but not limited to, an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF.

(3)    PODSROC_GRAFFITI_ASIAN_HATE_CRIME is, including but not limited to, an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF, to

intimidate PLAINTIFF, and attempt to muzzle and silence PLAINTIFF about, including but not limited to, THEKNEE.

(4)     PLAINTIFF's allegations within this Complaint are credible especially considering ORTHO1 and ORTHO2, respectively, have work experiences with very well-known sports organizations, whereby some of the sports organizations could be associated with very well-known political figures.

i.      DEFENDANTS and DOES are aware of ORTHO1's and ORTHO2's associations with very well-known sports organizations and very well-known political figures.

(5)     Including but not limited to, DEFENDANTS and DOES, colluded and conspired to injure and harm PLAINTIFF by, including but not limited to:

i.      threatening to severely injure and harm PLAINTIFF by medical professionals noted in, including but not limited to, this complaint and AMENDED_WDNY_2018;

ii.     convincing PLAINTIFF to willfully submit to unnecessary right knee arthroscopy under full anesthesia, and then severely harming PLAINTIFF due to an 'error' while PLAINTIFF was under full anesthesia.

(6)     PLAINTIFF's allegations within this Complaint are credible especially considering PLAINTIFF's family's political history and background described in, including but not limited to, AMENDED_WDNY_2018.

**(7)     PLAINTIFF's allegations regarding, including but not limited to, SCROGER's, DEFENDANT's, and DOES' pattern of harmful conduct against PLAINTIFF (noted in, including but not limited to, this Complaint and AMENDED_WDNY_2018) are credible especially considering SCROGER's family's history and background.**

**i.      <u>SCROGER and SCROGER's only younger sister, Michele Scroger DesAutels, hereinafter "MS DESAUTELS", explicitly stated to PLAINTIFF that SCROGER and MS DESAUTELS are descendants of the Daughters of the American Revolution (hereinafter "DAR").</u>**

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

    i. **SCROGER and MS_DESAUTELS explicitly stated to PLAINTIFF regarding SCROGER's and MS_DESAUTELS' American Revolution family history early in PLAINTIFF's marriage to SCROGER.**

ii. **SCROGER and MS_DESAUTELS explicitly stated to PLAINTIFF that SCROGER's and MS_DESAUTELS' DAR family history is rooted in the Western New York Area of Oakfield and Batavia New York in association with the Wolcott family and specifically <u>Oliver Wolcott, a signer of the Declaration of Independence from the American Revolution</u>.**

iii. **PLAINTIFF attended several Wolcott family reunions in and around the Western New York area during PLAINTIFF's marriage with SCROGER:**

| | |
|---|---|
| **From:** | James W. Yoo |
| **To:** | "Yoo, Stephanie A" |
| **Subject:** | RE: Wolcott Reunion |
| **Date:** | Friday, June 29, 2012 3:31:00 PM |

Got it. Thanks.

**From:** Yoo, Stephanie A [mailto:stephanie.yoo@
**Sent:** Friday, June 29, 2012 3:30 PM
**To:** James W. Yoo
**Subject:** FW: Wolcott Reunion 

Your email to resend went to my junk email.. just saw it looking for something else – can you read this? I can print out if need be.

**From:** Scroger,
**Sent:** Wednesday, June 20, 2012 9:13 PM
**To:** Yoo, Stephanie A
**Subject:** Wolcott Reunion

Hi Steph,

It was great to see you all today and to meet James. I got to thinking after you left....the Wolcott Reunion is coming up on Aug 19 in Oakfield. I have attached the invitation in case you might be inclined to attend. We plan on going and it would be great to have another branch of the family tree represented!

Take care.. thanks again for stopping in for a visit!

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

iv.    Note, Oliver Wolcott's signature second to the last, seen below next to arrow.

**(8)    PODSROC_GRAFFITI_ASIAN_HATE_CRIME is, including but not limited to,**

**an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF,**

**to intimidate PLAINTIFF, and attempt to muzzle and silence PLAINTIFF about, including but not limited to, SCROGER's American Revolution and DAR family history and heritage.**

    **i.**    **DEFENDANTS and DOES are aware of SCROGER's American Revolution and DAR family history and heritage.**

(9)    PODSROC_GRAFFITI_ASIAN_HATE_CRIME is, including but not limited to, an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF, to intimidate PLAINTIFF, and attempt to muzzle and silence PLAINTIFF about, including but not limited to, PLAINTIFF's interactions with one of SCROGER's older brother, Tim Scroger (hereinafter T_SCROGER), and T_SCROGER's family.

    i.    Including but not limited to, SCROGER and P_FRASCA, colluded and / or conspired and continues to collude and / or conspire to "frame" PLAINTIFF by, including but not limited to, using PLAINTIFF's biometric identity, including but not limited to, fingerprints, from handling and firing T_SCROGER's 9mm handgun, and handling 9mm bullets and ammunition clips while loading T_SCROGER's 9mm handgun.

    ii.    The following excerpt, hereinafter "AMENDED_WDNY_2018_P118", is an excerpt from Paragraph 118 of AMENDED_WDNY_2018 which again describes PLAINTIFF's interaction with people, including but not limited to, T_SCROGER regarding T_SCROGER's 9mm handgun:

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

118.   On or around 2014 or 2015, STEPHANIE encouraged Plaintiff to go to the shooting range with STEPHANIE's older brother T_SCROGER.

(1)   During a family visit from which Plaintiff and STEPHANIE visited T_SCROGER and his family in Pennsylvania, STEPHANIE, T_SCROGER, Peggy Scroger (T_SCROGER's wife), T_SCROGER's two children, and Plaintiff went to a shooting range.

(2)   Plaintiff only fired T_SCROGER's 9mm handgun; STEPHANIE was the only person who did not operate any firearms.

(3)   Plaintiff refused T_SCROGER's offer to fire T_SCROGER's shotgun.

(4)   Plaintiff has only fired two firearms in Plaintiff's life; a .22 rifle to earn a merit badge as a Scout, and T_SCROGER's 9mm handgun.

(5)   STEPHANIE demonstrates a pattern of behavior 'with other actor(s)' to delegate, evade, or conduct coercive behavior on behalf of STEPHANIE and/or to collude and/or conspire 'with other actor(s)';

  i.   STEPHANIE delegated to T_SCROGER to convince Plaintiff to go to a shooting range and operate a firearm.

(hereinafter, "AMENDED_WDNY_2018_P118")

(10)   PODSROC_GRAFFITI_ASIAN_HATE_CRIME is, including but not limited to, an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF, to intimidate PLAINTIFF, and attempt to muzzle and silence PLAINTIFF about, including but not limited to, PLAINTIFF's interactions with SCROGER's sister, Michele Scroger DesAutels (hereinafter MS_DESAUTELS and MS_DESAUTELS' husband Phillip DesAutels (hereinafter P_DESAUTELS) and collectively hereinafter "DESAUTELS".

  i.   SCROGER was present with PLAINTIFF when MS_DESAUTELS and P_DESAUTELS visited and stayed with PLAINTIFF and SCROGER in MACEDON prior to May 2015, hereinafter "VISIT", while PLAINTIFF and SCROGER were still married.

ii.   SCROGER was aware of PLAINTIFF's concern and anxiety about DESAUTELS bringing an assault rifle and handgun to MACEDON as SCROGER disregarded PLAINTIFF's concern about storing DESAUTELS' firearms at MACEDON during DESAUTELS' VISIT.

iii.   During VISIT, SCROGER encouraged PLAINTIFF to join P_DESAUTELS and P_DESAUTELS' friend, hereinafter DESAUTELS_FRIEND, and go to a firing range in Penfield New York, hereinafter "PENFIELD_FIRINGRANGE".

iv.   PLAINTIFF went to PENFIELD_FIRINGRANGE, meeting P_DESAUTELS and DESAUTELS_FRIEND, whereby P_DESAUTELS and DESAUTELS_FRIEND operated and fired assault rifles and handguns.

   i.   PLAINTIFF did NOT operate or touch any firearms with P_DESAUTELS or DESAUTELS_FRIEND.

v.   PLAINTIFF is / was concerned about, including but not limited to, SCROGER and DESAUTELS attempting to frame PLAINTIFF by planting a firearm in MACEDON without PLAINTIFF's knowledge.

vi.   Including but not limited to SCROGER cooperated, colluded, and / or conspired with, including but not limited to, DESAUTELS, in attempts to frame PLAINTIFF by planting a firearm in MACEDON without PLAINTIFF's knowledge.

(11)   PLAINTIFF is / was concerned about, including but not limited to, SCROGER and P_FRASCA attempting to frame PLAINTIFF by planting a weapon or firearm in MACEDON without PLAINTIFF's knowledge especially considering P_FRASCA's daughter, hereinafter M_FRASCA and named as a defendant in AMENDED_WDNY_2018, is / was a high ranking police officer for the Monroe County Rochester New York police department.

i.     Including but not limited to SCROGER cooperated, colluded, and / or conspired with, including but not limited to, P_FRASCA, in attempts to frame PLAINTIFF by planting a weapon or firearm in MACEDON without PLAINTIFF's knowledge.

ii.    Shortly after SCROGER moved out of MACEDON in early December 2016 on SCROGER's own volition, PLAINTIFF purchased a Garrett metal detector security wand (hereinafter "GARRETT") whereby PLAINTIFF attempted to scan the entire MACEDON residence for any weapons (legal or illegal) or firearms (legal or illegal) of any type and whereby weapons (legal or illegal) or firearms (legal or illegal) were NOT found on MACEDON premises.

iii.   PLAINTIFF spent about a day using GARRETT to scan the entire MACEDON residence to the best of PLAINTIFF's ability.

iv.    PLAINTIFF returned GARRETT shortly after PLAINTIFF scanned the entire MACEDON residence and that further scans of MACEDON for any weapons or firearms were NOT conducted by PLAINTIFF.

(12)   PODSROC_GRAFFITI_ASIAN_HATE_CRIME is, including but not limited to, an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF, to intimidate PLAINTIFF, and attempt to muzzle and silence PLAINTIFF about, including but not limited to, PLAINTIFF's interactions T_SCROGER.

i.     SCROGER was present with PLAINTIFF when T_SCROGER discussed DESAUTELS possessing about 30,000 rounds of ammunition stored at DESAUTELS' small orchard in the State of Maine.

(13)   PODSROC_GRAFFITI_ASIAN_HATE_CRIME is, including but not limited to, an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF, to intimidate PLAINTIFF, and attempt to muzzle, silence, and defame PLAINTIFF about, including but not limited to, any and all statements and / or allegations made by PLAINTIFF as plaintiff in civil complaints, including but not limited to, AMENDED_WDNY_2018.

i.  Including but not limited to, SCROGER and DEFENDANTS, cooperated, colluded, and / or conspired, directly or indirectly, with, including but not limited to, RGH, to disparage PLAINTIFF by, including but not limited to, falsely stating that PLAINTIFF possessed contraband or insinuating that PLAINTIFF was a drug user noted in, including but not limited to, AMENDED_WDNY_2018 and PLAINTIFF's medical records originating in the Western New York region.

ii.  PLAINTIFF is NOT a drug user and that PLAINTIFF has only used drugs in the form of marijuana twice whereby PLAINTIFF's first brief experience with marijuana was as a senior in high school with four other persons and whereby PLAINTIFF's last brief experience with marijuana was in college with another person.

iii.  Including but not limited to SCROGER cooperated, colluded, and / or conspired with, including but not limited to, P_FRASCA, in attempts to frame PLAINTIFF by planting illegal substances or illegal drugs in MACEDON without PLAINTIFF's knowledge.

iv.  Shortly after SCROGER moved out of MACEDON in early December 2016 on SCROGER's own volition, PLAINTIFF attempted to search the entire MACEDON residence for any illegal substances or illegal drugs of any type and whereby illegal substances or illegal drugs of any type were NOT found on MACEDON premises.

v.  Including but not limited to SCROGER, ORTHO1, ORTHO2, and DOES, attempted to convince PLAINTIFF to willfully submit to unnecessary right knee arthroscopy under full anesthesia, and then severely harming PLAINTIFF due to an 'error' while PLAINTIFF was under full anesthesia AND further severely harming PLAINTIFF by conspiring and / colluding to addict PLAINTIFF to 'narcotics' or 'opioids' for dealing with pain associated with full right knee arthroscopy 'error'.

vi.   Including but not limited to, SCROGER, ORTHO1, ORTHO2, and DOES
      attempted to, directly or indirectly, to addict PLAINTIFF to 'narcotics' or 'opioids'
      and   fits   the   pattern   of   behavior   exhibited   and   described   in
      AMENDED_WDNY_2018 whereby RGH falsely and maliciously noted
      'contraband' on PLAINTIFF's RGH records and whereby RGH falsely and
      maliciously noted numerous doses of Ativan.

vii.  Including but not limited to, SCROGER, ORTHO1, ORTHO2, and DOES
      attempted to, directly or indirectly, defame and smear PLAINTIFF as a 'drug user'
      of 'narcotics' or 'opioids' whereby RGH falsely and maliciously noted 'contraband'
      on PLAINTIFF's RGH records and whereby RGH falsely and maliciously noted
      numerous doses of Ativan.

(14)   PODSROC_GRAFFITI_ASIAN_HATE_CRIME is, including but not limited to, an
actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF, to
intimidate PLAINTIFF, and attempt to muzzle, silence, and defame PLAINTIFF about,
including but not limited to, PLAINTIFF's work experience.

  i.   SCROGER is aware that PLAINTIFF was laid off from Global Crossing in a
       "reduction in force", hereinafter "RIF".

 ii.   SCROGER is aware of and has seen PLAINTIFF's document, which is current
       stored in PODSROC, regarding and specifically stating the PLAINTIFF was laid off
       from Global Crossing (hereinafter "GC") via RIF considering the necessity to
       reduce GC's cost structure from the acquisition of GC by Singapore
       Telecommunications and Technologies (hereinafter "STT") shortly after
       PLAINTIFF successfully led GC's security and technology team through the CFIUS
       national security review process.

iii.   PLAINTIFF was NOT fired or 'removed for cause', directly or indirectly, from GC.

iv.  PLAINTIFF left MCIWorldCom on good terms to accept a position with GC with more responsibilities and challenges.

v.  PLAINTIFF resigned Andersen Consulting (now known as Accenture) in July 1994 due to PLAINTIFF being overwhelmed, further described in AMENDED_WDNY_2018, from the passing of both PLAINTIFF's parents (PLAINTIFF's father passing in 1990 and mother passing in September 1992).

vi.  PLAINTIFF left all other employment positions prior to Andersen Consulting on good terms whereby PLAINTIFF accepted the next employment opportunity with more responsibilities and challenges.

(15)  PODSROC_GRAFFITI_ASIAN_HATE_CRIME is, including but not limited to, an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF, to intimidate PLAINTIFF, and attempt to muzzle and silence PLAINTIFF about, including but not limited to, SCROGER taking a $200k life insurance policy against PLAINTIFF without PLAINTIFF's prior knowledge or consent.

(16)  PODSROC_GRAFFITI_EXTORTION is, including but not limited to, an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF and a reminder of PLAINTIFF's ordeal at RGH as described, including but not limited to, in AMENDED_WDNY_2018:

i.  PLAINTIFF urinated on himself at RGH Emergency Room (hereinafter "RGH_ER") which necessitated removing PLAINTIFF's pants and underwear;

ii.  PODSROC_GRAFFITI_EXTORTION is, including but not limited to, an actual or attempted threat made by DEFENDANTS and DOES against PLAINTIFF regarding PLAINTIFF's ordeal at RGH, including but not limited to, events and allegation described in AMENDED_WDNY_2018.

iii.  PODSROC_GRAFFITI_EXTORTION is, including but not limited to, taunts and threats made by DEFENDANTS and DOES against PLAINTIFF regarding

attempts to institutionalize PLAINTIFF in "adult care / hospice wet nurse / nanny"

considering PLAINTIFF urinating on himself at RGH_ER in the presence of an

RGH_ER nurse.

iv.     DEFENDANTS and DOES pattern of attempted and / or actual harmful conduct

against PLAINTIFF described in this Complaint and AMENDED_WDNY_2018

shows DEFENDANTS and DOES motives to induce PLAINTIFF into a hospital /

mental facility, especially against PLAINTIFF's will and explicit consent.

v.      Including but not limited to, the following persons have knowledge or received

PLAINTIFF's information and / or documents regarding PLAINTIFF's RGH

experience described in AMENDED_WDNY_2018:

    a.   SCROGER;

    b.   SCROGER's attorneys, including but not limited to Seema Ali Rizzo;

    c.   PFRASCA's daughter, Melissa Frasca, an employee of the Monroe County

    Police Department, and a named defendant in AMENDED_WDNY_2018;

    d.   persons involved in PLAINTIFF's divorce proceedings, including but not

    limited to, PLAINTIFF's second divorce attorney.

(17)    PODSROC_GRAFFITI_EXTORTION is, including but not limited to, an actual or

attempted threat made by DEFENDANTS and DOES against PLAINTIFF.

67.     PLAINTIFF initially noticed the graffiti noted in PODSROC_GRAFFITI_ALL near the

beginning of May 2019 at PODSROC.

68.     **On or around September 18th 2019**, PLAINTIFF's NYWAYNECOMPLAINT was

dismissed with prejudice whereby SCROGER was denied recovery of attorney fees.

**69.     DEFENDANTS have direct knowledge of any of PLAINTIFF's statements and
allegations in this Complaint.**

**70.     DEFENDANTS have indirect knowledge of any of PLAINTIFF's statements and
allegations in this Complaint.**

**71.     DEFENDANTS' actual and / or attempted actions and conduct against PLAINTIFF inflicted, including but not limited to, ongoing emotional, ongoing mental, and ongoing psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.**

## CAUSES OF ACTION

72.     PLAINTIFF realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

### COUNT I
### INTERFERENCE WITH COMMERCE BY THREATS OR VIOLENCE
### (18 U.S.C. § 1951)
### (AGAINST ALL DEFENDANTS)

73.     PLAINTIFF realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

74.     18 U.S.C. § 1951 – Interference with Commerce by Threats or Violence

(1)     "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."[1]

75.     DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

76.     DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

77.     DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

78.     Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

79.     DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

80.     DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

        (1)     DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

81.     DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

        (1)     PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with,

including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

(2)     PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to, DEFENDANTS and DOES.

82.     PLAINITFF alleges that while the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

83.     DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

84.     DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress.  Any reasonable Court, judge, or jury would view DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.


## COUNT II
## EQUAL RIGHTS UNDER THE LAW
### (42 U.S.C. § 1981 (a)(c))
### (AGAINST ALL DEFENDANTS)

85.     PLAINTIFF realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

86.     42 U.S.C. § 1981 (a)(c):

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

(1)     "(a) Statement of equal rights:  All <u>persons</u> within the jurisdiction of the <u>United</u> <u>States</u> shall have the same right in every <u>State</u> and <u>Territory</u> to <u>make and enforce</u> <u>contracts</u>, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of <u>persons</u> and property <u>as is</u> enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, <u>taxes,</u> licenses, and exactions of every kind, and to no other."[2]

(2)     "(c) Protection against impairment:   The rights protected by this section are protected against impairment by nongovernmental <u>discrimination</u> and impairment under color of <u>State</u> law."[2]

87.     DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

88.     DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

89.     DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

90.     Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

91.     DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

92.    DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

    (1)    DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

93.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

    (1)    PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with, including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

    (2)    PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to, DEFENDANTS and DOES.

94.    While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

95.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's

calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

96.     DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress.   Any reasonable Court, judge, or jury would view DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.


## COUNT III
### ACTION FOR NEGLECT TO PREVENT
### (42 U.S.C. § 1986)
### (AGAINST ALL DEFENDANTS)

97.     Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

98.     42 U.S.C. § 1986 – Action for Neglect to Prevent

(1)     "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit

of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."[3]

99.    PLAINTIFF believes any reasonable Judge, Court, or Jury would view DEFENDANTS and DOES as certainly having knowledge of the wrongs conspired and / colluded to be done, that are about to be committed, who had the power to prevent the commission of the same, or who demonstrated directly or indirectly neglect or refusal to prevent the commission of the same.

100.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

101.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

102.    DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

103.    Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

104.    DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

105.    DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited

to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

(1)     DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

106.   DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

(1)     PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with, including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

(2)     PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's FEAR OF BEING STALKED by, including but not limited to, DEFENDANTS and DOES.

107.   While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

108.   DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

109.    DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress.  Any reasonable Court, judge, or jury would view DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT IV
### AN ACTION TO RECOVER DAMAGES FOR A PERSONAL INJURY
### (NEW YORK CPLR § 214(4))
### (AGAINST ALL DEFENDANTS)

110.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

111.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

112.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

113.    DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

114.    Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

115.    DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition,

perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

116.    DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

(1)    DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

117.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

(1)    PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with, including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

(2)    PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to, DEFENDANTS and DOES.

118.    While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

119.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

120.    DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress.  Any reasonable Court, judge, or jury would view DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT V
## DEFAMATION
### (NEW YORK CPLR § 215(3))
### (AGAINST ALL DEFENDANTS)

121.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

122.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

123.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

124.    DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

125.    Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but

not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

126.   DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

127.   DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

(1)   DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

128.   DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

(1)   PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with, including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

(2)   PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to, DEFENDANTS and DOES.

129.    While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

130.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

131.    DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress.  Any reasonable Court, judge, or jury would view DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT VI
## ASSAULT
### (NEW YORK CPLR § 215(3))
### (AGAINST ALL DEFENDANTS)

132.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

133.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

134.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

135.    DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

136.    Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

137.    DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

138.    DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

    (1)    DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

139.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and / or future harmful or offensive contact by DEFENDANTS and DOES.

    (1)    PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with,

including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

(2)     PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to, DEFENDANTS and DOES.

140.    While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

141.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

142.    DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress.  Any reasonable Court, judge, or jury would view DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.


## COUNT VII
### INTENTIONAL INFLICTION OF EMOTOINAL DISTRESS
### (NEW YORK CPLR § 215(3))
### (AGAINST ALL DEFENDANTS)

143.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

144.   DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

145.   DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

146.   DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

147.   Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

148.   DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

149.   DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

    (1)   DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

150.   DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

(1)     PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with, including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

(2)     PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to, DEFENDANTS and DOES.

151.    While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

152.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

153.    DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress.  Any reasonable Court, judge, or jury would view DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT VIII

### NEGLIGENT INFLICTION OF EMOTOINAL DISTRESS
### (NEW YORK 75a Jur. 2d Limitations and Laches 215)
### (AGAINST ALL DEFENDANTS)

154.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

155.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

156.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

157.    DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

158.    Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

159.    DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

160.    DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

 (1) DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

161. DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

 (1) PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with, including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

 (2) PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to, DEFENDANTS and DOES.

162. While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

163. DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

164. DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly and / or negligently caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress. Any reasonable Court, judge, or jury would view

DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

### COUNT IX
### PERSONAL ACTION FOR INJURY TO PERSON OR PROPERTY GENERALLY
### (VIRGINIA § 8.01 - 243)
### (AGAINST ALL DEFENDANTS)

165.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

166.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

167.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

168.    DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

169.    Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

170.    DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

171.   DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

> (1)   DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

172.   DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

> (1)   PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with, including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

> (2)   PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to, DEFENDANTS and DOES.

173.   While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

174.   DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's

calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

175.    DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress.  Any reasonable Court, judge, or jury would view DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT X
## CIVIL ACTION FOR STALKING
## (VIRGINIA § 8.01 – 42.3)
## (AGAINST ALL DEFENDANTS)

176.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

177.    DEFENDANTS and DOES stalked PLAINTIFF as exampled by, including but not limited to, obtaining sufficient information prior to PLAINTIFF's arrival at PODSROC to coordinate actions with, including but not limited to, PODS and SIRACUSA, regarding, including but not limited to, the July 13th SIRACUSA incident, PODSROC_GRAFFITI_ASIAN_HATE_CRIME, and PODSROC_GRAFFITI_EXTORTION.

178.    DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

(1)    DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

179.    PLAINTIFF originated travel from PLAINTIFF's residence in the Arlington, Virginia area to PODSROC.

180.    PLAINTIFF only interacted with PODS_REP to schedule access to PLAINTIFF's PODS unit in PODSROC.

181.    PLAINTIFF can provide copies of mobile phone call records, text messages, and emails regarding interactions with PODS and PODS_REP to further support PLAINTIFF's Complaint.

182.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

   (1)    PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with, including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

   (2)    PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to, DEFENDANTS and DOES.

183.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

184.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

185.   DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

186.   Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

187.   DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

188.   While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

189.   DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

190.   DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress.  Any reasonable Court, judge, or jury would view DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT XI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (VIRGINIA § 8.01 – 243)
### (AGAINST ALL DEFENDANTS)

191.   Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

192.   DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

193.   DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

194.   DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

195.   Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

196.   DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

197.   DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

(1)      DEFENDANTS and DOES stalking behavior are similar to behavior and conduct

which can be described as "gang" or "mafia" like conduct.

198.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct against

PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to,

immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

(1)      PLAINTIFF's apprehensions and fears about immediate and / or future harmful or

offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are

credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have

shown their ability to plan and execute harming PLAINTIFF given their pattern of

attempted and / or actual conduct against PLAINTIFF and given their relationships with,

including but not limited to, individuals, entities and DOES, owning and operating firearms

described in this Complaint and AMENDED_WDNY_2018.

(2)      PLAINTIFF's apprehensions and fears about immediate and / or future harm or

offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can

be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to,

DEFENDANTS and DOES.

199.    While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs

within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing

injuries and harm while resident in the EDVA.

200.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and

/ or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's

calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or

PLAINTIFF's personal relationships.

201.    DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or

recklessly caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and

psychological distress.  Any reasonable Court, judge, or jury would view DEFENDANTS and

DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## COUNT XII
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (VIRGINIA § 8.01 – 243)
### (AGAINST ALL DEFENDANTS)

202.    Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint and paragraphs in the counts below as though set forth fully herein.

203.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF.

204.    DEFENDANTS and DOES attempted and / or conspired to extort PLAINTIFF and threatened physical violence, directly or indirectly, against PLAINTIFF whereby DEFENDANTS and DOES attempted to obstruct PLAINTIFF's commerce.

205.    DEFENDANTS and DOES attempted and / or actual actions and conduct against PLAINTIFF inflicted, including but not limited to, emotional, mental, and psychological distress upon PLAINTIFF, harming and damaging PLAINTIFF.

206.    Including but not limited to, SCROGER, PODS, P_FRASCA and DOES prior abusive actions and harmful conduct against PLAINTIFF, as alleged in this Complaint and, including but not limited to, AMENDED_WDNY_2018, shows DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

207.    DEFENDANTS and DOES conspired and / or colluded against PLAINTIFF based on, including but not limited to, PLAINTIFF's race, sex, age, perceived or actual medical condition, perceived or actual political expressions, and / or perceived or actual political advocacy considering, including but not limited to, PLAINTIFF's family's political interactions and history.

208.    DEFENDANTS and DOES methods and mean to stalk PLAINTIFF, that is, to surreptitiously obtain, coordinate, and distribute information regarding, including but not limited to, PLAINTIFF's movements show DEFENDANTS and DOES pattern of abusive actions and harmful conduct against PLAINTIFF.

      (1)    DEFENDANTS and DOES stalking behavior are similar to behavior and conduct which can be described as "gang" or "mafia" like conduct.

209.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct against PLAINTIFF caused, including but not limited to, apprehension of, including but not limited to, immediate and /or future harmful or offensive contact by DEFENDANTS and DOES.

      (1)    PLAINTIFF's apprehensions and fears about immediate and / or future harmful or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES are credible considering, including but not limited to SCROGER, P_FRASCA, and DOES have shown their ability to plan and execute harming PLAINTIFF given their pattern of attempted and / or actual conduct against PLAINTIFF and given their relationships with, including but not limited to, individuals, entities and DOES, owning and operating firearms described in this Complaint and AMENDED_WDNY_2018.

      (2)    PLAINTIFF's apprehensions and fears about immediate and / or future harm or offensive contact by, including but not limited to, SCROGER, P_FRASCA, and DOES can be described as PLAINTIFF's <u>FEAR OF BEING STALKED</u> by, including but not limited to, DEFENDANTS and DOES.

210.    While the initial injuries and harm experienced by PLAINTIFF to this Complaint occurs within the WDNY, PLAINTIFF continues to experience, including but not limited to, ongoing injuries and harm while resident in the EDVA.

211.    DEFENDANTS and DOES attempted and / or actual actions and / or conduct harmed and / or damaged PLAINTIFF's health, PLAINTIFF's safety, PLAINTIFF's business, PLAINTIFF's

calling, PLAINTIFF's career, PLAINTIFF's financial condition, PLAINTIFF's reputation, or PLAINTIFF's personal relationships.

212.    DEFENDANTS and DOES extreme and / or outrageous conduct intentionally and / or recklessly and / or negligently caused PLAINTIFF to suffer, including but not limited to, severe emotional, mental, and psychological distress.  Any reasonable Court, judge, or jury would view DEFENDANTS and DOES conduct as outrageous in character, beyond all possible bounds of decency, and utterly intolerable by any civilized society.

## **PRAYER FOR RELIEF**

**213.    WHEREFORE, PLAINTIFF demands judgement against DEFENDANTS on all Counts, and seeks such relief as specified below for all Counts for which such relief is provided by law:**

> (1)    Awarding PLAINTIFF damages in an amount to be proven at trial, and in an amount of $808,000,000 (Eight Hundred and Eight million US Dollars), to compensate PLAINTIFF for, including but not limited to, injuries, harm, damages, and losses suffered by PLAINTIFF as a result of DEFENDANTS' attempted and / or actual actions and conduct against PLAINTIFF;

> (2)    Awarding PLAINTIFF compensatory and treble damages, as available, in an amount to be proven at trial;

> (3)    Awarding PLAINTIFF any and all financial gain earned by DEFENDANTS as a consequence of DEFENDANTS' attempted and / or actual actions and conduct against PLAINTIFF described herein;

> (4)    Awarding PLAINTIFF statutory damages, as available;

> (5)    Awarding PLAINTIFF punitive damages, as available;

> (6)    Issuing an injunction restraining DEFENDANTS and their officers, agents, servants, employees, assigns, and those acting in active concert, acting indirectly or on

behalf of (that is acting with the intent and / or desire of acting with plausible deniability), or participation with them from:

    a)   accessing PLAINTIFF's personal property, including but not limited to, electronic devices, computer networks and/or personal emails without PLAINTIFF's authorizations;

    b)   engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of PLAINTIFF's personal property, including but not limited to, electronic devices, computer networks or personal emails;

    c)   selling, publishing, distributing, or using any property or information obtained from PLAINTIFF's personal property, including but not limited to electronic devices, computer networks or personal emails without PLAINTIFF's authorization;

    d)   removing, extracting, or copying any information or data from PLAINTIFF's personal property, including but not limited to, electronic devices, computers or personal emails without PLAINTIFF's authorization.

(7)    Awarding PLAINTIFF all costs, fees, and expenses, including but not limited to, attorneys' fees to the full extent permitted under the applicable law;

(8)    Awarding PLAINTIFF pre- and post-judgement interest as permitted by law;

(9)    Awarding any other relief as the Court may deem just and proper.

Complaint filed in the US District Court for the Western District of New York
With Appendices "A" through "J" and Endnotes

## JURY TRIAL DEMANDED

214.   **Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PLAINTIFF demands trial by jury of all issues so triable.**


Date:   April 29th 2020                          Respectfully submitted,

Rochester, New York


Sworn to before me this

_____ day of April 2020.

*NOT AVAILABLE*

_____            _____

Notary Public   *AT COURT*            **James W. Yoo**

                                     **PLAINTIFF,** *Pro Se*

                                     Mail:      PO Box 7284  Arlington, VA  22207
                                     Mobile:   315-830-4761
                                     E-mail:    thejamesyoo@protonmail.com